MARY FANTOZZI, Appellant, v. THE SECURITY MUTUAL FIRE INSURANCE COMPANY, Respondent.

Third Department, June 25, 1936.

*John P. Weatherwax*, for the appellant.

*Hamilton J. Hewitt* [*Frank H. Deal* of counsel], for the respondent.

HILL, P. J. At the close of plaintiff's evidence the court dismissed the complaint. The action was brought to recover the value of plaintiff's automobile insured against theft by defendant. The trial court granted the nonsuit because the action was not commenced within twelve months after the theft and upon the further ground that plaintiff had not furnished written verified proofs of loss within sixty days of the theft.

On the day following the theft, plaintiff telephoned the agent who issued the policy telling him of the loss. He came to her residence, asked questions about the automobile and the theft, and wrote down her answers upon a blank which she signed. He said he would mail the paper, a notice of the loss, to the defendant and " that there would be no further notice to be sent in, and that within sixty days, if the car was not found, you [plaintiff] would receive your money." Defendant received the notice. Its counsel used it during his cross-examination of plaintiff and her daughter, but refused to permit plaintiff's counsel to see it, and did not offer it in evidence.

The policy of insurance covered loss by fire as well as theft. The total premium was eight dollars, divided as stated in the policy, " Fire Premium $5.50 " and " Theft Premium $2.50." The fire policy was in the usual form. It contained the statutory requirements and the provisions approved by the Superintendent of Insurance. (Insurance Law, § 121.) Among these appeared the two which caused the trial court to grant the dismissal: (1) " The insured shall within sixty days *after the fire,* unless such time is extended in writing by this company, render to this company a proof of loss, signed and sworn to by the insured;" and (2) " No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, unless all the requirements of this

policy shall have been complied with, nor unless commenced within twelve months next *after the fire.*" There was no special limitation in the supplemental contract as to the time within which the action should be brought, and the requirement as to notice and proof of loss was that " It is a condition of this insurance that in the event of loss or damage, the insured shall protect the property from further loss or damage and give immediate notice thereof to this company or its agent who issued this policy." Plaintiff complied with this provision.

The Insurance Law (§ 121, subd. 10) prescribes: " Appropriate forms of supplemental contract or contracts whereby the property described in such policy shall be insured against one or more of the risks specified in section one hundred and ten of this chapter [loss by theft is included] in addition to the risk of direct loss or damage by fire, may be approved by the Superintendent of Insurance, and their use in connection with a standard fire insurance policy may be authorized by him."

The supplemental contract supplies, by additions, that which is lacking in the original to make it applicable to loss by theft. The general provisions of indemnity against loss in the original fire policy became a part of the supplemental theft agreement. It could not have been the intent of the parties that those relating only to a loss by fire should apply to loss by theft. It is the intention of the parties " expressed or fairly to be inferred, that counts." (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 51.) A fire policy is used to insure a wide variety of properties, both real and personal. Oftentimes it contains no inventory of the items of personal property insured — a stock of merchandise, household furniture in a dwelling and books in a library. In this theft policy the automobile is described minutely, the year it was manufactured, its type, the factory serial number, the motor number, the number of cylinders of its motor and other details are given. Written notice that it had been stolen, given immediately to the company or the agent who issued the policy, was a greater aid to the insurer than an itemized and verified proof of loss filed sixty days " after the fire " (theft). The intent governs. This must be determined in part by considering the subject-matter of the contract.

In connection with salvage, there is no analogy between the two kinds of insurance. The only salvage in a theft loss is recovery; in a fire loss some articles are destroyed, others slightly damaged permitting repair. The lapse of time before payment or suit is of no benefit to an insurer in a fire loss. In a theft loss it affords greater opportunity for recovery. This fire policy states, " Unless otherwise provided by agreement in writing added hereto, this

company shall not be liable for loss or damage occurring \* \* \* (d) while illuminating gas or vapor is generated on the described premises; or while (no usage or custom to the contrary notwithstanding) there is kept, used or allowed on the described premises \* \* \* gasoline, naphtha or any other petroleum product of greater inflammability than kerosene oil." Certainly there was no intent that this would apply to an insurance contract against loss by theft of a gasoline propelled automobile, and by the same reasoning, because of the differences I have mentioned and many others not enumerated between loss by fire and theft, the requirement for " a proof of loss signed and sworn to by the insured " to be furnished the company " within sixty days after the fire " does not apply, and no more the requirement that suit must be commenced " within twelve months next after the fire." Had the parties and draftsman intended that where " fire " was used in the original contract it should be read " theft " when that kind of a policy was issued, the supplemental contract would have so stated.

There having been no " fire " plaintiff was not required to present proofs of loss within sixty days thereafter or to bring her action within twelve months. The policy was prepared by defendant and should be construed most strictly against it.

The judgment of nonsuit should be reversed on the law, with costs, and a new trial ordered.

RHODES, BLISS and HEFFERNAN, JJ., concur; McNAMEE, J., concurs in the result.

Judgment reversed on the law, with costs, and a new trial ordered.